# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 16-940V

| | |
|---|---|
| PAULETTE STUART, | TO BE PUBLISHED |
| Petitioner, | |
| v. | Special Master Katherine E. Oler |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Filed: January 5, 2022 |
| | Interim Attorneys' Fees and Costs |
| Respondent. | |

*Amber D. Wilson*, Wilson Science Law, Washington, DC, for Petitioner.
*Camille M. Collett*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On August 4, 2016, Paulette Stuart filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program") alleging that she suffered from pain, upper and lower extremity burning, numbness, and difficulty ambulating as a result of the influenza vaccination she received on October 25, 2013. Pet. at 1, ECF No. 1. At the time, Petitioner was represented by Ms. Amber Wilson of Maglio,

---

[1] This Decision will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Christopher, & Toale.[3]

On May 3, 2021, Petitioner filed an application for interim attorneys' fees and costs, totaling $143,267.47.[4] Fees Reply. at 5, ECF No. 84. On August 10, 2021, Respondent filed a response stating it is within my discretion to award interim attorneys' fees and costs. Fees Resp., ECF No. 103. Respondent "defers to [me] to determine whether or not petitioner here has met the legal standard for interim fees and costs award." *Id.* at 2.

For the reasons discussed below, I hereby **GRANT IN PART** Petitioner's application and award a total of **$138,809.51**[5] in interim attorneys' fees and costs.

## I.     Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.*, 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

---

[3] At the time, Ms. Wilson was employed by the law firm of Maglio, Christopher and Toale. Ms. Wilson is now employed by Wilson Science Law.

[4] Petitioner requests $23,811.90 in fees and $2,175.22 in costs to be paid to her current firm, Wilson Science Law. Petitioner requests $80,615.20 in fees and $36,665.15 in costs to be paid to her former firm, Maglio, Christopher, and Toale.

[5] This amount is broken down into **$25,559.92** in interim fees and costs for Wilson Science Law, and **$113,249.59** for Maglio, Christopher and Toale.

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought her petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

**B. Good Faith**

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

**C. Reasonable Basis**

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health &*

3

*Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

**II.     Discussion**

    **A.   Undue Financial Hardship**

The parties are in the midst of informal settlement negotiations. Petitioner is currently awaiting her Social Security Disability file from the Social Security Administration. Petitioner and her counsel have been litigating this claim for more than five years and have incurred over one

hundred thousand dollars in attorneys' fees and costs. Thus, I find it reasonable to award interim fees and costs at this juncture to avoid any undue financial hardship.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is a much lower standard than the burden to prove entitlement to compensation by preponderant evidence. In making a reasonable basis determination, I must look at a totality of the circumstances, taking into account the factual basis for the claim and the medical and scientific support offered. Petitioner has filed extensive medical records in this case. *See* Exs. 1-28. Petitioner has also filed three expert reports. ECF Nos. 42, 64, 77. I find that Petitioner had a reasonable basis to file her claim.

As there is no other reason to deny the award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

### C. Attorneys' Fees related to Wilson Science Law

Petitioner requests a total of $23,811.90 in attorneys' fees. *See* Fees App. Ex. A at 7.

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[6]

---

[6] The 2015–2016 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

Ms. Wilson requests to be compensated at a rate of $345.00 per hour for work performed in 2019 and $378.00 per hour for work performed in 2020. *See* Fees App. at 4. These rates are consistent with the Fee Schedule and with what Ms. Wilson has been awarded in the past. *See Blender v. Sec'y of Health & Hum. Servs.*, No. 16-1308V, 2021 U.S. Claims LEXIS 2716 (Fed. Cl. Spec. Mstr. Nov. 22, 2021). I find the requested rates to be reasonable and that no adjustment is warranted.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (same). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Petitioner's counsel has provided a breakdown of hours billed and costs incurred. Fees App. Ex A. I find the hours to be largely reasonable, however I find a small reduction is appropriate for time billed by Ms. Wilson for administrative tasks, such as reviewing CM/ECF notifications and communicating scheduling deadlines. Billing for administrative tasks is not appropriate. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature ... should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Mostovoy v. Sec'y of Health & Hum. Servs.*, No. 02-10, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing "reviewing invoices, setting up meetings, and making travel arrangements" as examples of administrative tasks); *Macrelli v. Sec'y of Health & Hum. Servs.*, No. 98–103, 2002 WL 229811, at *7 (Fed. Cl. Spec. Mstr. Jan. 30, 2002) (stating that "time spent performing secretarial tasks is to be subsumed in the overhead costs of practicing law and is not reimbursable"); *Isom v. Sec'y of Health & Hum. Servs.*, No. 94–770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with respondent that tasks such as filing and photocopying are subsumed under overhead expenses).

The entries of an administrative nature from 2020 occur on 4/28/2020 (0.1 hours), 4/29/2020 (four entries totaling 0.4 hours), 5/4/2020 (0.1 hours), 7/10/2020 (0.1 hours), and 9/4/2020 (0.1 hours), for a total of 0.8 hours, resulting in a reduction of $276.00.

The entries of an administrative nature from 2021 occur on 1/15/2021 (0.1 hours), 1/18/2021 (0.1 hours), 1/19/2021 (0.1 hours) and 4/21/2021 (0.1 hours), for a total of 0.4 hours, resulting in a reduction of $151.20.
.

Total attorneys' fees to be awarded: **$23,384.70.**

### D. Reasonable Costs related to Wilson Science Law

Petitioner requests a total of $2,175.22 in costs, which includes obtaining medical records, medical literature, postage costs, and expert witness fees. Fees App. Ex. A. at 8.

1. Petitioner's expert costs

Petitioner requests $2,000.00 for work performed by Dr. Eric Gershwin. Fees App, Ex. A at 18. Petitioner requests Dr. Gershwin be compensated at $500.00 per hour. Dr. Gershwin has previously been awarded his requested rate and I see no reason to disturb such a request. *See A.S. v. Sec'y of Health & Hum. Servs.*, No. 15-520V, 2020 U.S. Claims LEXIS 1196 (Fed. Cl. Spec. Mstr. June 4, 2020); *Hoskins v. Sec'y of Health & Hum. Servs.,* 2017 U.S. Claims LEXIS 934 (Fed. Cl. Spec. Mstr. July 12, 2017). Dr. Gershwin spent a total of four hours reviewing medical literature and Respondent's expert report. I find this to be reasonable and accordingly award Dr. Gershwin's expert fees in full.[7]

2. Miscellaneous costs

I have reviewed Petitioner's miscellaneous costs and supporting documentation and find these costs to be reasonable. I therefore award them in full.

Total costs to be awarded: **$2,175.22.**

### E. Attorneys' Fees related to Maglio, Christopher, and Toale

Petitioner requests a total of $80,615.20 in attorneys' fees. *See* Fees App. Ex. B at 43.

1. Reasonable Hourly Rate

Petitioner's attorneys request the following rates for work performed from 2016-2020:

| Attorney | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|
| Amber Wilson | $275.00 | $290.00 | $308.00 | $323.00 | $345.00 |
| Alton Maglio | X | $362.00 | X | X | X |
| Anne Toale | X | X | X | $420.00 | X |
| D. Stadelnikas | $359.00 | X | X | X | X |
| Paralegal | $105.00 | $145.00 | $148.00 | $154.00 | $160.00 |
| Medical Records Paralegal | X | X | $140.00 | $145.00 | X |

---

[7] Dr. Gershwin's bill states "to review Exhibits 36, 93, A, C, D, and report of Dr. Bakshi…as a courtesy claim 4 hrs only." Fees App. Ex. A at 18. While I have not deducted Dr. Gershwin's fees on this occasion, in the future, Dr. Gershwin is encouraged to refrain from block billing in this manner so that he may be compensated fairly for the work he has performed. Future instances of block billing will result in deferral and/or reductions of expert fees.

These rates are consistent with the Fee Schedule and with what attorneys and paralegals from Maglio, Christopher and Toale has been awarded in the past. *See Blender v. Sec'y of Health & Hum. Servs.*, No. 16-1308V, 2020 U.S. Claims LEXIS 1618 (Fed. Cl. Spec. Mstr. Aug. 5, 2020). I find the requested rates to be reasonable and that no adjustment is warranted.

### 2. Hours Reasonably Expended

Petitioner's counsel has provided a breakdown of hours billed and costs incurred. Fees App. Ex B. I find the hours to be largely reasonable, however I find a reduction is appropriate for time billed for administrative tasks[8] and overstaffing.[9] *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201. 214-15 (Fed. Cl. 2009) (affirming a special master's reduction of fees for overstaffing where three attorneys from two different firms worked on the same case); *Van Vessem v. Sec'y of Health & Hum. Servs.*, No. 11-132V, 2018 U.S. Claims LEXIS 955, 2018 WL 3989517, at *7 (Fed. Cl. Spec. Mstr. July 3, 2018) (finding that "it is not reasonable for both an attorney and a paralegal to bill for reviewing each filing in the case"). I therefore will reduce the fees awarded to Maglio, Christopher and Toale by 5%, for a reduction of **$4,030.76.**

Total attorneys' fees to be awarded: **$76,584.44.**

### F. Reasonable Costs related to Maglio, Christopher & Toale

Petitioner requests $36,665.15 in costs, which includes obtaining medical records, medical literature, postage costs, travel expenses, the Court's filing fee, and expert witness fees. Fees App. Ex. B at 47.

---

[8] *See e.g.*, billing entries on 4/24/2017 (0.2 hours) and 4/25/2017 (0.2 hours) coordinating an in-person meeting and travel to Petitioner; billing entry of 7/10/2018 (0.5 hours) by timekeeper ADW preparing exhibits for filing; *see also* billing entry of 12/7/2018 (0.3 hours) by timekeeper EKM researching copying fees and speaking to hospitals about duplicate MRI images; three billing entries on 8/9/2016 totaling 0.6 hours for drafting notices of filing; billing entries by timekeeper ADW on 8/11/2016 (0.2 hours), and 8/12/2016 (0.3 hours) for reviewing and editing filing notices; billing entries by timekeeper ADW on 12/20/2016 (0.1 hours), 3/29/2017 (0.1 hours) and 5/31/2017 (0.1 hours) for reviewing CM/ECF notifications, and billing entries from timekeeper KAD on 11/22/2016 (0.1 hours), 12/20/2016 (0.1 hours), 5/30/2017 (0.1 hours) for reviewing CM/ECF entries. This list does not include all instances of billing for administrative/secretarial tasks, but is a representative sample of numerous instances throughout the fee application.

[9] *See, e.g.*, billing entry on May 29, 2019 from timekeeper ADW stating "Review court scheduling order re Petitioner status report deadline on proceeding" and billing entry from timekeeper EKM on the same date stating "Review and analyze scheduling order for action needed. Update deadlines accordingly." It is inefficient for both an attorney and paralegal to review the same scheduling order. *See* Blender, 2020 U.S Claims LEXIS 1618 at *7. *See also* billing entries from timekeeper KAD on 10/4/2016 (0.2 hours) and 10/10/2016 (two entries totaling 0.4 hours) and billing entries from timekeeper ADW on 10/10/2016 (two entries totaling 0.4 hours), 10/17/2016 (0.2 hours) and 10/18/2016 (0.3 hours) all consisting of entries to determine "subpoena status" or "review" subpoenas. Fees App. Ex. B at 10. This list does not include all instances of duplicate billing, but is a representative sample of numerous instances throughout the fee application.

1. Petitioner's expert costs

Petitioner requests $11,000.00 for work performed by Dr. Eric Gershwin. Fees App, Ex. B at 128. Petitioner requests Dr. Gershwin be compensated at $500.00 per hour. Dr. Gershwin has previously been awarded his requested rate and I see no reason to disturb such a request. *See A.S. v. Sec'y of Health & Hum. Servs.*, No. 15-520V, 2020 U.S. Claims LEXIS 1196 (Fed. Cl. Spec. Mstr. June 4, 2020); *Hoskins v. Sec'y of Health & Hum. Servs.,* 2017 U.S. Claims LEXIS 934 (Fed. Cl. Spec. Mstr. July 12, 2017). Dr. Gershwin spent a total of 22 hours reviewing medical records and preparing an expert report. As previously noted, in the future I will reduce Dr. Gershwin's costs if he continues to engage in block billing, I find this amount of time spent overall reviewing medical records and writing his report to be reasonable and accordingly award Dr. Gershwin's expert fees in full.

Petitioner also requests $21,750 for work performed by Dr. Kazim Sheikh. Fees App. Ex. B at 36, 153. Petitioner requests Dr. Sheikh be compensated at $500.00 per hour. Dr. Sheikh has previously been awarded his requested rate and I see no reason to disturb such a request. *See Shinskey v. Sec'y of Health & Hum. Servs.*, No. 15-713V, 2019 U.S. Claims LEXIS 482, 2019 WL 2064558, at *5 (Fed. Cl. Spec. Mstr. May 9, 2019); *St. Pierre v. Sec'y of Health & Hum. Servs.,* No. 16-1315V, 2019 U.S. Claims LEXIS 35, 2019 WL 410599, at *2 (Fed. Cl. Spec. Mstr. Jan. 11, 2019); *Riley v. Sec'y of Health & Hum. Servs.*, No. 16-262V, 2020 U.S. Claims LEXIS 234 (Fed. Cl. Spec. Mstr. Feb. 6, 2020).

Dr. Sheikh produced two expert reports in this case. Exs. 36, 93. He spent 33 hours writing his first report, and 10.5 hours producing his second. I find Dr. Sheikh's billing entries are adequate to sufficiently explain how he spent his time, and I find the time spent producing these reports to be reasonable. Accordingly, I will award his costs in full.

2. Miscellaneous costs

I have reviewed Petitioner's miscellaneous costs and supporting documentation and find these costs reasonable. I therefore award them in full.

Total costs to be awarded: **$36,665.15.**

### III. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A sum in the amount of **$25,559.92**, representing reimbursement of Ms. Amber Wilson's interim fees and costs, in the form of a check jointly payable to Petitioner and Wilson Science Law.

A sum in the amount of **$113,249.59**, representing reimbursement of Petitioner's interim fees and costs, in the form of a check jointly payable to Petitioner and Maglio, Christopher, and Toale.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[10]

Any questions regarding this Order may be directed to my law clerk, Neil Bhargava, by telephone at 202-357-6351, or by email at neil_bhargava@cfc.uscourts.gov.

**IT IS SO ORDERED.**

                                                **s/ Katherine E. Oler**
                                                Katherine E. Oler
                                                Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.